UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SHAHEAN JONES, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | Case No. 4:04CV 653 HEA(LMB) |
| ) | |
| DAVE DORMIRE and ) | |
| JEREMIAH "JAY" NIXON,[1] ) | |
| ) | |
| ) | |
| Respondent. ) | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter is before the court on the petition of Shahean Jones for a writ of habeas corpus under 28 U.S.C. § 2254. This cause was referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636(b).

**Procedural History**

Petitioner is presently incarcerated at the Jefferson City Correctional Center in Jefferson City, Missouri, pursuant to the sentence and judgment of the Circuit Court of St. Louis County, Missouri. See Respondent's Exhibit B at 61. On March 24, 1999, petitioner was found guilty after a jury trial of first degree murder and armed criminal action. See id. at 56-57. He was sentenced to a term of life imprisonment without probation or parole for the first degree murder count and a consecutive term of life imprisonment for the armed criminal action count. See id. at 62.

---

[1]The Attorney General of the State of Missouri is a proper party respondent, because petitioner is challenging present and future sentences in this action. See Rule 2 (b), Rules Governing Section 2254 proceedings in the United States District Courts.

Petitioner raised two points on direct appeal from the trial court's judgment and sentence. See Resp't Ex. C. Petitioner argued that the trial court erred in failing to strike a venireperson for cause. See id. Petitioner also argued that the trial court abused its discretion in admitting autopsy photographs because they were repetitive, prejudicial, inflammatory, and lacked probative value. See id. On June 20, 2000, the Missouri Court of Appeals for the Eastern District affirmed the trial court's judgment. See Resp't Ex. E.

On September 14, 2000, petitioner filed a pro se motion to vacate, set aside, or correct the judgment of the Circuit Court of St. Louis County, Missouri, pursuant to Missouri Supreme Court Rule 29.15. See Resp't Ex. F at 3-13. On February 26, 2001, after appointment of counsel, petitioner filed an Amended 29.15 Motion and Request for Evidentiary Hearing. See id. at 18-26. Petitioner raised the following claims: (1) appellate counsel was ineffective for failing to brief the issue of hearsay evidence that was admitted at trial; (2) appellate counsel was ineffective for failing to brief the issue of petitioner's requested jury instruction on involuntary manslaughter; and (3) trial counsel was ineffective for failing to call his mother and his brother as witnesses. See id. On June 26, 2002, the motion court denied petitioner's motion for post-conviction relief in all respects without an evidentiary hearing. See id. at 45-61. Petitioner timely filed a notice of appeal from the denial of post-conviction relief. See id. at 63.

In his appeal from the denial of post-conviction relief, petitioner argued that the motion court erred in denying his motion because trial counsel was ineffective for failing to call his mother and brother to testify on his behalf. See Resp't Ex. G. On April 29, 2003, the Missouri Court of Appeals for the Eastern District affirmed the judgment of the motion court. See Resp't Ex. I.

On May 26, 2004, petitioner, pro se, filed the instant petition for a writ of habeas corpus, raising the following grounds for relief: (1) the trial court erred in failing to strike a venireperson;

(2) the trial court erred in admitting autopsy photographs of the victim into evidence because they were prejudicial, inflammatory, and of no probative value; and (3) he received ineffective assistance of counsel because trial counsel failed to call his mother and brother to testify. (Doc. No. 1). On August 13, 2004, respondent filed a Response to Order to Show Cause, in which respondent argues that petitioner's grounds for relief are untimely, and that petitioner's claims fail on their merits. (Doc. No. 10). Petitioner has also filed a Traverse, in which he provides further argument in support of his petition. (Doc. No. 15).

**Facts**

The sufficiency of the evidence is not at issue. Viewed in a light most favorable to the verdict, the evidence adduced at trial established the following facts.[2] Petitioner lived with his mother, Addie Jones, his brother, Chauncy Jones, and the victim, Alvin Johnson. Petitioner stated he did not like Mr. Johnson, and wanted to kill Mr. Johnson a couple of weeks before Mr. Johnson's murder.

On April 21, 1997, Mr. Johnson went into petitioner's bedroom and the two men got into an argument over $38.00 petitioner borrowed from Mr. Johnson to buy a pair of shoes. At some point thereafter, petitioner went back into Mr. Johnson's room and began to argue with him again. Mr. Johnson picked up petitioner and threw him into the hallway and shut the bedroom door. Petitioner returned to his own room and retrieved a .25 caliber semi-automatic gun. With the gun in hand, petitioner walked into Mr. Johnson's room, without knocking, and found him sitting on the bed watching television. Petitioner told Mr. Johnson they were going

---

[2]The court's statements of the facts is taken from the summary of facts contained in the decision of the Missouri Court of Appeals for the Eastern District affirming the judgment of the trial court. Resp't Ex. E at 2-3.

to resolve things because he could not go on with things as they were. Once again, the two men argued and petitioner eventually walked out and shut the door.

At that point, Mr. Johnson opened his bedroom door and said he did not appreciate petitioner coming into his room and threatening him with a gun. Petitioner then shot Mr. Johnson in the upper part of the chest. The bullet went through Mr. Johnson's sternum, through his windpipe, and through the upper lobe of his right lung. Mr. Johnson grabbed his throat and fell to the floor. Petitioner went back into his room, and could hear Mr. Johnson making choking noises and became concerned that Mr. Johnson might still be alive. Petitioner went back into the hall and shot Mr. Johnson in the back of the head. The bullet went through Mr. Johnson's brain, killing him. Petitioner's brother woke up upon hearing the second shot, and petitioner told him what had happened.

Approximately thirty minutes later, some friends arrived. They sat around smoking marijuana while petitioner told them about the shooting. They also discussed various ways to dispose of Mr. Johnson's body. They considered burning it, throwing it off a bridge, or cutting it up.

Over the next two days, petitioner made preparations to dispose of the body. He bought a saw to cut up the body, but decided against it. He also borrowed some weights from a friend, wrapped Mr. Johnson in layers of plastic and linens, and tied the weights around the body. Petitioner planned to throw the body into the river, keeping it down with the weights.

On April 23, 1997, before petitioner could dispose of the body, petitioner's mother called the police and told them her son had killed Mr. Johnson. Petitioner was gone by the time the police arrived. During their search of the house, the police found Mr. Johnson's body wrapped in plastic bags and bed linens, with weights tied to it.

On April 24, 1997, an officer found petitioner and arrested him. Petitioner told the police officer he had planned to turn himself in that same day. After waiving his Miranda rights, petitioner told police he shot Mr. Johnson following an argument.

Petitioner testified at trial on his own behalf and asserted a defense of self-defense, and in the alternative, sudden passion. The jury found petitioner guilty of both charges.

## Discussion

### A. Standard of Review

A federal court's power to grant a writ of habeas corpus is governed by 28 U.S.C. § 2254(d), which provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The Supreme Court construed Section 2254(d) in <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000). With respect to the "contrary to" language, a majority of the Court held that a state court decision is contrary to clearly established Federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or if the state court "decides a case differently than [the] Court has on a set of materially indistinguishable facts." 529 U.S. at 405, 120 S. Ct. at 1519. Under the "unreasonable application" prong of § 2254(d)(1), a writ may issue if "the state court identifies the correct governing legal rule

-5-

from [the Supreme Court's] cases but unreasonably applies [the principle] to the facts of the particular state prisoner's case." Id. Thus, "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." Id. at 410, 120 S. Ct. at 1521. Although the Court failed to specifically define "objectively unreasonable," it observed that "an unreasonable application of federal law is different from an incorrect application of federal law." Id. at 410, 120 S. Ct. at 1522.

**B.**     **Timeliness Under the AEDPA**

Respondent argues that petitioner's petition is untimely under the Anti-terrorism and Effective Death Penalty Act of 1996 (AEDPA). Petitioner contends that the one-year period was tolled by his filing of a post-conviction motion. For the reasons explained herein, the undersigned agrees with petitioner's assessment.

The AEDPA imposed a one-year period of limitation on federal petitions for habeas corpus. The governing provision provides: "A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2244(d)(1). For purposes of the AEDPA, a judgment becomes final "by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). Additionally, §2244(d)(2) provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." Further, "for purposes of § 2244(d)(2), 'an application is 'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings.'" Marx v. Gammon, 234 F.3d 356, 357 (8th Cir. 2000)(quoting Artuz v. Bennett, 531 U.S. 4, 8, 121 S.Ct. 361, 364, 148 L.Ed.2d 213 (2000)).

Petitioner properly filed a motion for post-conviction relief, which tolled the one-year period under §2244(d)(2). Respondent argues that even if petitioner's filing of a post-conviction relief motion tolled the one-year period, the one-year period was tolled only until the Missouri Court of Appeals affirmed the denial of post-conviction relief on April 29, 2003. Respondent contends that petitioner's petition filed on May 26, 2004, was thus untimely. In his Traverse, petitioner argues that the Missouri Court of Appeals did not issue the mandate until July 22, 2003. See Petitioner's Exhibit A-1. Petitioner argues that the statute of limitations was tolled until July 22, 2003, and that his petition filed on May 26, 2004 was, therefore, timely.

Missouri courts have held that the issuance of the mandate, not the issuance of an opinion, determines the date of finality of a state appellate decision. See Williams v. Blumer, 763 S.W.2d 242, 245 (Mo. Ct. App. 1988); Meierer v. Meierer, 876 S.W.2d 36, 37 (Mo. Ct. App. 1994). As such, under Missouri state court procedures, petitioner's post-conviction relief proceedings were not final until the issuance of the mandate on July 22, 2003. Petitioner filed his petition within one year of this date. Accordingly, petitioner's petition was timely filed.

**C.    Petitioner's Claims**

Petitioner raises three grounds for relief. The undersigned will address each ground for relief in turn.

**1.    Ground One**

In his first ground for relief, petitioner argues that the trial court erred in failing to strike Venireman George Niewald for cause because Mr. Niewald stated that he would give a police officer's testimony more weight than that of other witnesses.

During voir dire, Mr. Niewald indicated that he would tend to give a police officer's testimony more credibility due to the fact that he is a police officer. See Resp't Ex. 1 at 128-29.

Petitioner's attorney moved to strike Mr. Niewald for cause. See id. at 138. The trial court then questioned Mr. Niewald as follows:

> THE COURT: Mr. Niewald, you were asked about police officer credibility versus other people's credibility.
>
> VENIREMAN NIEWALD: Yeah.
>
> THE COURT: Do you believe the average police officer who comes here to testify in this courtroom would be more truthful about what he or she testifies about than the average citizen would be truthful about what they would testify about?
>
> VENIREMAN NIEWALD: No, I think he would have more of an idea about what he's talking about. I think he would make a better witness because he would be far more observant.
>
> THE COURT: Do you think because of a police officer's training he or she would be a better observer of the facts going on around him than an average lay person would be?
>
> VENIREMAN NIEWALD: Uh-hum.
>
> THE COURT: It wouldn't have anything to do with his truthfulness or untruthfulness; is that correct? And I don't mean to put words in your mouth.
>
> VENIREMAN NIEWALD: Yeah, I can't say whether or not a guy would be truthful. That's because I don't know that many people who are truthful. I have a nephew who is a police officer, and I always believed him.
>
> THE COURT: Your nephew is a police officer?
>
> VENIREMAN NIEWALD: He was; he's retired now.
>
> THE COURT: Just because he was a police officer do you believe that he'd be any more believable than any of your other nephews?
>
> VENIREMAN NIEWALD: No.
>
> THE COURT: All right. Do you have further inquiry, [defense counsel]?
>
> [DEFENSE COUNSEL]: Just to clarify, Mr. Niewald, I asked you specifically if you would give more credibility to a police officer just because he is, in fact, a police officer and wears that uniform. And what I meant was would you tend to believe a police officer more and not hold him on the same scale that you would a lay witness?

>VENIREMAN NIEWALD: Well, you're asking the same question. I say because a guy is so much more experienced--I don't think that he's more truthful than the other guy, but he is probably more observant. I would say that he would look at something and he would see it better than I would.
>
>[DEFENSE COUNSEL]: Would that cause you to tend to believe what he has to say more than you would a lay witness?
>
>VENIREMAN NIEWALD: I really don't know if I can answer that question unless I saw the guy answer the question. I mean–
>
>[DEFENSE COUNSEL]: Well, let me ask you this: A police officer comes in and swears to tell the truth. Are you open to the possibility and consider the fact that the police officer may in fact lie to you?
>
>VENIREMAN NIEWALD: Oh, yes.
>
>[DEFENSE COUNSEL]: Okay. Thank you, Mr. Niewald.
>
>[PROSECUTOR]: Sir, in other words, you would have to wait and see whoever it was testifying before you can make a determination in your own mind as to whether or not they were telling the truth?
>
>VENIREMAN NIEWALD: I think I could observe--I would think I would know if someone was lying or not.

Id. at 138-41. The trial court denied petitioner's motion to strike Mr. Niewald for cause. See id. at 142. Petitioner renewed his motion to strike Mr. Niewald. See id. at 184. The trial court again denied petitioner's motion, noting that Mr. Niewald was referring to a police officer's ability to observe due to his training and not his truthfulness. See id. at 186.

Petitioner raised this claim in his direct appeal. See Resp't Ex. C. The Missouri Court of Appeals rejected petitioner's claim, finding that the trial court did not err in failing to strike Mr. Niewald for cause because Mr. Niewald was rehabilitated. See Resp't Ex. E at 5.

For petitioner to maintain a claim that a biased juror prejudiced him, "he must show that the juror was actually biased against him." Goeders v. Hundley, 59 F.3d 73, 75 (8th Cir. 1995).

Whether a juror is biased "is a question of fact, and we defer to a state-court finding of juror bias if it is fairly supported by the record." Antwine v. Delo, 54 F.3d 1357, 1369 (8th Cir. 1995).

The finding of the Missouri Court of Appeals that Mr. Niewald was rehabilitated is supported by the record. Mr. Niewald testified that he did not think police officers were more truthful but, rather, he believed that they were more observant due to their training. Mr. Niewald stated that he was open to the possibility that a police officer may in fact lie. Mr. Niewald indicated that he would have to observe the witnesses before determining their credibility. As such, petitioner's claim that the trial court erred in failing to strike Mr. Niewald fails.

Accordingly, the undersigned recommends that petitioner's first ground for relief be denied.

## 2. Ground Two

In his second ground for relief, petitioner argues that the trial court erred in admitting autopsy photographs of the victim into evidence over his objection because they were prejudicial, inflammatory, and of no probative value.

Generally, questions concerning the admissibility of evidence are matters of state law, and the issue on habeas review is not whether the evidence was properly admitted under state law. See Estelle v. McGuire, 502 U.S. 62, 67, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991). Evidentiary issues can, however, form the basis for habeas relief if the error constitutes an independent constitutional violation. See Bounds v. Delo, 151 F.3d 1116, 1119 (8th Cir. 1998). "A state court's evidentiary rulings can form the basis for federal habeas relief under the due process clause only when they were so conspicuously prejudicial or of such magnitude as to fatally infect the trial and deprive the defendant of due process." Id. (quoting Parker v. Bowersox, 94 F.3d 458, 460 (8th Cir. 1996)). To meet this standard, a petitioner must show a reasonable probability that the

evidentiary errors affected the trial's outcome. See Meadows v. Delo, 99 F.3d 280, 283 (8th Cir. 1996).

Petitioner raised this claim in his direct appeal. See Resp't Ex. C. The Missouri Court of Appeals held as follows:

> State's Exhibits 26, 27, and 28 show the victim's body in varying stages from the point where it was fully wrapped in linens and plastic, to the point where the layers of wrappings were removed. These photographs show the condition of the body at the time it was found. These photographs are also relevant to show a disputed issue in the case, the mental state of the Defendant at the time of the shooting. The photographs illustrate Defendant's preparations for destroying evidence by disposing of the body and are also relevant to show that Defendant did not act in self-defense.
> The State relies on State v. Ellison, 980 S.W.2d 97, 102 (Mo. App. W.D. 1998). Ellison states:
>> A person guilty of murder can generally be expected to go to far greater lengths to destroy evidence than a person guilty of an accident or reckless death. This is because it is instinctively and intuitively apprehended that one's best hope to be believed that a death was actually accidental or reckless is to immediately report the death and explain the circumstances.
>
> See also State v. Moore, 949 S.W.2d 629 (Mo. App. W.D. 1997), where concealing the body supported an inference of deliberation.
> State's Exhibits 29 and 30 are photographs of the victim's head and upper chest, showing exactly where the bullet entered the victim's body. These photographs are admissible to show the nature and extent of the victim's wounds, as well as corroborate the testimony of the pathologist.
> The trial court's admission of the autopsy photographs was not an abuse of discretion as the photographs are relevant to a material issue of the case, depict the nature and extent of the wounds and condition of the body, and assist the jury's understanding of the testimony. Point two is denied.

Resp't Ex. E at 6-7.

The decision of the Missouri Court of Appeals was not contrary to clearly applicable federal law. The Court found that the photographs were relevant to show the condition of the body when it was found and petitioner's mental state, which was at issue at trial. Petitioner maintained at trial that he acted in self-defense. The autopsy photographs that show the victim's body fully wrapped in linens and plastic support the inference that petitioner prepared the body to dispose of it and thus

-11-

did not act in self-defense. Photographs of the victim's head and upper body showed the nature and extent of the victim's wounds. The trial court's admission of autopsy photographs of the victim did not deprive petitioner of due process.

Accordingly, the undersigned recommends that petitioner's second ground for relief be denied.

**3.     Ground Three**

In his third ground for relief, petitioner argues that he received ineffective assistance of counsel because trial counsel failed to call his mother, Addie Jones, and his brother, Chauncy Williams, to testify on his behalf. Petitioner contends that this testimony would have corroborated his claim that he acted in self-defense.

To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate that his attorney failed to exercise the degree of skill and diligence a reasonably competent attorney would exercise under similar circumstances, and additionally, the petitioner must show that he was prejudiced by his attorney's action or inaction. See Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). A petitioner must show that "counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment." Id. "Prejudice" is shown by a petitioner when it is demonstrated that there is a reasonable probability that but for counsel's errors, the result of the proceeding would have been different. Id. at 694, 104 S.Ct. at 2068. A "reasonable probability" is defined as a probability sufficient to undermine confidence in the outcome. Id. The petitioner must not only assert prejudice, but must affirmatively prove that prejudice was present. See id. at 693, 104 S.Ct. at 2067. A habeas petitioner "must overcome the strong presumption that in the circumstances of his case 'the

challenged action might be considered sound trial strategy.'" Seehan v. State of Iowa, 72 F.3d 607, 611 (8th Cir. 1995) (quoting Strickland, 466 U.S. at 689, 104 S.Ct. at 2065).

Counsel's decision not to interview or call a particular witness is evaluated from the perspective of counsel at the time the decision was made. Parker v. Bowersox, 94 F.3d 458, 461 (8th Cir. 1996). An attorney's performance is objectively reasonable, where counsel determined that testimony from witnesses identified by a defendant would be detrimental and rationally declined to call the witnesses as a matter of trial strategy. See United States v. Smith, 62 F.3d 1073, 1078 (8th Cir. 1995).

Petitioner raised this claim in his post-conviction relief motion. See Resp't F at 18-26. The motion court rejected petitioner's claim, finding that trial counsel was not ineffective for failing to put on cumulative evidence. See id. at 58-59. The Missouri Court of Appeals also rejected the claim on appeal of the denial of post-conviction relief. See Resp't Ex. I at 5. The Court noted that neither petitioner's mother nor his brother witnessed petitioner shoot the victim and their testimony thus could not prove that petitioner acted in self-defense. See id.

The state courts engaged in a proper Strickland analysis and found that petitioner was not prejudiced by trial counsel's failure to call these witnesses. This decision is supported by the record. Petitioner claims that this testimony would show that he had a troubled relationship with the victim and that the victim had a history of violence. Such testimony, however, would not demonstrate that petitioner was justified in using deadly force. Neither petitioner's mother nor his brother were present when petitioner shot the victim. At trial, petitioner testified that he entered the victim's bedroom with a gun in hand when the victim was lying in bed watching television, unarmed. See Resp't Ex. A at 490, 509. Petitioner stated that he got the gun because he was "mad at that time," and "wanted to get even with him." Id. at 509. Petitioner testified that he was afraid

-13-

of the victim but acknowledged that he could have simply gone down the stairs and left rather than shoot the victim. See id. at 507. After shooting the victim once, petitioner returned and shot the victim again, killing him. See id. at 495. Petitioner's own testimony reveals that he did not act in self-defense. The testimony of his mother and brother would not have affected the outcome of the trial.

Accordingly, the undersigned recommends that petitioner's third ground for relief be denied.

**D.     Certificate of Appealability**

To grant a certificate of appealability, a federal habeas court must find a substantial showing of the denial of a federal constitutional right. See 28 U.S.C. § 2253(c)(2); Hunter v. Bowersox, 172 F.3d 1016, 1020 (8th Cir. 1999). A substantial showing is established if the issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings. See Cox v. Norris, 133 F.3d 565, 569 (8th Cir. 1997) (citing Flieger v. Delo, 16 F.3d 878, 882-83 (8th Cir. 1994)). In this case, petitioner has failed to make a substantial showing of the denial of a constitutional right. The undersigned is not persuaded that the issues raised in his petition are debatable among reasonable jurists, that a court could resolve the issues differently, or that the issues deserve further proceedings.

Accordingly, the undersigned recommends that no certificate of appealability be issued.

## RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the petition of Shahean Jones for a writ of habeas corpus under 28 U.S.C. § 2254 be **denied.**

**IT IS FURTHER RECOMMENDED** that no certificate of appealability be issued.

The parties are advised that they have eleven (11) days, until May 21, 2007, to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. See Thompson v. Nix, 897 F.2d 356, 357 (8th Cir. 1990).

Dated this 10th day of May, 2007.

*/s/ Lewis M. Blanton*
LEWIS M. BLANTON
UNITED STATES MAGISTRATE JUDGE